UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| QUEST SPORTS SURFACING, LLC,<br>an Indiana limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>1st TURF, INC., a Florida corporation,<br>PRESTIGE SPORTS NORTH AMERICA,<br>LLC, a Florida limited liability company,<br>MICHAEL G. MCGRAW, and DOES 1-10,<br>inclusive,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:07-cv-0907-DFH-WGH |

ENTRY ON PENDING MOTIONS

According to the Second Amended Complaint in this case, plaintiff Quest Sports Surfacing, LLC supplied and installed artificial turf for a high school in Seattle, Washington in 2000 and was never paid for its product or services. Plaintiff Quest filed this action on July 12, 2007. Its timing, choice of venue, and choice of defendants have presented a host of procedural issues. The three defendants have filed a combined motion that seeks to dismiss the case on multiple grounds, or to transfer of the case to either Florida or Washington, or to require a more definite statement, and to strike portions of the complaint. Plaintiff Quest has responded with its own motion seeking either permission to conduct discovery related to personal jurisdiction or a transfer to Florida. As explained below, the court finds:  (a) that the issue of personal jurisdiction over one

defendant was resolved conclusively by a state court in 2004, (b) that the state court's resolution also applies to the other two defendants, (c) that plaintiff is not entitled to discovery on personal jurisdiction, and (d) that the action should be transferred to the Middle District of Florida.

Plaintiff Quest is an Indiana limited liability company whose members are Indiana citizens.   Defendant 1st Turf, Inc. is a Florida corporation with its principal place of business in Florida.  Defendant Prestige Sports North America, LLC is a defunct Florida limited liability company whose members were and are Florida citizens.  Defendant Michael G. McGraw is a citizen of Florida and is the sole or principal owner of the other two defendants.   McGraw and the other defendants share a business address and telephone number in Florida.   The complaint also refers to several "John Doe" defendants, but these unidentified and unserved defendants are only nominal parties and irrelevant in this diversity jurisdiction case.  See *Howell v. Tribune Entertainment Co.*, 106 F.3d 215, 218 (7th Cir. 1997).

For purposes of the pending motions, the court accepts as true the allegations in the complaint (actually the Second Amended Complaint), except to the extent that evidence relating to personal jurisdiction, venue, or service of process has been filed with the court.  Where the evidence conflicts, the plaintiff receives the benefit of the dispute unless the court holds an evidentiary hearing and finds disputed facts, which is not necessary in this case.   See generally

*Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (discussing treatment of allegations and affidavits in deciding issues of personal jurisdiction).

According to the complaint, Hale High School in Seattle was undertaking a construction project involving sports facilities in 2000. The general contractor, Western Tricon, contracted with defendant 1st Turf for artificial turf on a playing field for $558,348. 1st Turf contacted a Joe DiGeronimo in Massachusetts for help in locating suppliers to help 1st Turf meet its obligations on the Hale High School project. DiGeronimo recommended plaintiff Quest, and he contacted Quest on behalf of 1st Turf. On or about July 23, 2000, 1st Turf and Quest entered into a contract for installation of a synthetic turf playing field at Hale High School for a price of $301,000. The turf was installed in August 2000.

According to Quest's complaint, Western Tricon paid 1st Turf approximately $280,000 for the project in two payments in August and October 2000, but 1st Turf never paid Quest for its work on Hale High School. Quest wanted to be paid for its work. 1st Turf told DiGeronimo to tell Quest that Western Tricon was withholding payment because of various quality issues. In November 2000, as part of what plaintiff describes as a fraud, 1st Turf provided to DiGeronimo, for Quest's reading, a draft of a letter that 1st Turf's McGraw said he intended to send to Western Tricon concerning the quality issues. Plaintiff alleges this draft was part of an effort to lull it into accepting delays in payment and to prevent Quest

from seeking timely payment directly from Western Tricon, the school corporation, and/or the construction bonding company.

According to the complaint, the bonding company made a final payment of $147,673 to 1st Turf on June 19, 2002.  At some point, plaintiff sought payment from the construction bonding company.   On June 13, 2003, the bonding company declined plaintiff Quest's request for payment.  The bonding company told Quest that all payments had been made, and it provided documentation of all payments made to 1st Turf for the synthetic turf field, totaling more than $427,000.  This was all news to plaintiff Quest.

On January 30, 2004, plaintiff Quest filed suit in an Indiana state court against 1st Turf and McGraw.  Both defendants moved to dismiss for lack of personal jurisdiction.  Quest voluntarily dismissed the claims against McGraw without prejudice.  On March 14, 2005, the state court granted 1st Turf's motion to dismiss for lack of personal jurisdiction.  Def. Ex. G.  Quest did not appeal that dismissal.

Instead, Quest waited more than two years, until July 2007, to file this federal lawsuit against 1st Turf, McGraw, and Prestige Sports North America. Plaintiff asserts the following six counts against all three defendants:  I – breach of contract; II – breach of implied duty of good faith; III – unjust enrichment; IV –

negligence; V – fraud; VI – conversion.  The complaint also includes a count VII that alleges defendants should be estopped from relying on statutes of limitations.

All three defendants have moved to dismiss for lack of personal jurisdiction and improper venue.  Prestige Sports North America has moved to dismiss for improper service of process, as well.  All three defendants have also moved to dismiss under Rule 12(b)(6) on statute of limitations grounds, among others.  Defendants have also moved to strike the negligence count and portions of the fraud allegations.

*Personal Jurisdiction*

A federal court exercising diversity jurisdiction has personal jurisdiction over a defendant to the same extent that a state court in the forum state would. *Citadel Group Ltd. v. Washington Regional Medical Center*, — F.3d —, 2008 WL 2971807, at *2 (7th Cir. Aug. 5, 2008); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997); *NUCOR Corp. v. Aceros y Maquilas de Occidente*, 28 F.3d 572, 579-80 (7th Cir. 1994).  Quest argues primarily that it can establish specific jurisdiction over the defendants based on the communications between 1st Turf and Quest that led to the Hale High School contract and 1st Turf's and McGraw's later alleged fraudulent efforts to conceal from Quest the fact that 1st Turf had been paid for the Hale High School work.  Perhaps the most significant contact was that 1st Turf sent a faxed purchase order from Florida to Quest in

Indiana, for work to be performed in Washington with materials manufactured in Georgia.

The starting point on personal jurisdiction, however, is the Indiana state court's dismissal of Quest's lawsuit against 1st Turf for lack of personal jurisdiction.  Before digging into the nuances of when interstate communications can be sufficient to support personal jurisdiction in a case arising from a contract based on those communications, see generally *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 785 (7th Cir. 2003), the court must address the threshold and decisive issue:  whether the state court's dismissal of Quest's 2004 lawsuit against 1st Turf for lack of personal jurisdiction precludes Quest from re-litigating the issue.

In this diversity jurisdiction case, the court applies state law on issue preclusion and claim preclusion.  *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 916 (7th Cir. 2005); see generally *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 (1982).  Under Indiana law, the doctrine of collateral estoppel or issue preclusion applies to bar later litigation of a fact or issue if that fact or issue was necessarily decided in an earlier lawsuit.  *E.g.*, *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 704 (Ind. App. 2005).  The purpose of both issue preclusion and claim preclusion is to prevent repetitive litigation of the same dispute.  *Small v. Centocor, Inc.*, 731 N.E.2d 22, 26 (Ind. App. 2000).  The doctrine of claim preclusion applies to issues that were actually litigated and determined,

so long as the party to be estopped or precluded had a full and fair opportunity to litigate the issue and it would not be otherwise unfair to apply the doctrine. *Indianapolis Downs*, 834 N.E.2d at 705.

To avoid issue preclusion, Quest argues that the state court judge "failed to technically grasp the substance of the motion. . . ." Pl. Br. 21.  This argument is a non-starter.  If a party could avoid issue preclusion by arguing that the earlier decision was simply wrong, the doctrine would never apply.

Quest also argues that personal jurisdiction must be determined as of the time of filing, so that the issue of personal jurisdiction over 1st Turf in 2007 is different from the issue of personal jurisdiction over 1st Turf in January 2004. This argument requires closer attention.   Personal jurisdiction depends on whether the trial court has jurisdiction over the defendant at the time the suit is filed.  *Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999) (applying Missouri law); *Klinghoffer, v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990) (dicta). Whether an Indiana court could exercise jurisdiction over 1st Turf in 2004 is not necessarily the same question as whether an Indiana court could do so in 2007.

Changes in intervening facts therefore can justify a fresh look at an earlier dismissal for lack of personal jurisdiction, as the Eighth Circuit explained in *Pohlmann*.  See 176 F.3d at 1112-13 (discussing *Kitces v. Wood*, 917 F. Supp. 338,

340 (D. N.J. 1996), noting that if the defendant had moved into the forum state before the later suit was filed, the earlier dismissal would not preclude a new look at the issue, and noting that jurisdictional decisions will ordinarily be entitled to preclusive effect); see also *Klinghoffer*, 937 F.2d at 52 (noting that changes in Palestine Liberation Organization's status and activities in New York might produce different conclusions on personal jurisdiction for complaints filed at different times).  Without some change in the relevant facts, however, it is difficult to see why issue preclusion should not apply to an earlier court's decision on the issue.  See *Deckert v. Wachovia Student Financial Services, Inc.*, 963 F.2d 816, 819 (5th Cir. 1992) (affirming dismissal for lack of personal jurisdiction based on issue preclusion from earlier state court decision:  "In light of the state court's finding, Deckert cannot now seek to relitigate in federal court the personal jurisdiction issue which was the basis of the state court's order of dismissal.").

Where the plaintiff relies on specific jurisdiction, as Quest does here – *i.e.*, jurisdiction based on the defendant's contacts with the forum state from which the dispute arises – it seems unlikely that delay will change the relevant facts.  See *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) (when courts exercise specific jurisdiction, the "fair warning" required by due process arises at the time of the events giving rise to the suit, not when suit is filed; California could exercise specific jurisdiction over defendant based on his actions in California, even though he had moved to Virginia before suit was filed).

If an Indiana court could exercise personal jurisdiction over 1st Turf with respect to claims arising from the Hale High School contract, it could do only based on communications between 1st Turf in Florida and Quest in Indiana that occurred before the 2004 state court lawsuit. None of those facts have changed in the interim, so there is no basis for this court to revisit the state court's determination.[1] The state court's determination might have been right and might have been wrong, but the state court had jurisdiction to make that decision and the parties had a full and fair opportunity to litigate the issue. Plaintiff Quest lost there and did not appeal. Nor is there anything unusual about the situation that would make it unfair to preclude Quest from re-litigating this issue. After all, if the state court had reached the opposite conclusion, that decision would have been binding on 1st Turf. See, *e.g.*, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982). This lawsuit is not an appropriate substitute for such an appeal.

The next question is whether issue preclusion also applies to personal jurisdiction over defendants McGraw and Prestige Sports. McGraw had been named as a defendant in the state court suit, but Quest had voluntarily dismissed

---

[1]McGraw's appearance in the state court to testify in support of dismissal for lack of personal jurisdiction cannot be used against him or 1st Turf or Prestige Sports to establish personal jurisdiction now. His appearance did not undermine his ability to dispute personal jurisdiction in that case. It would be strange if an opponent could prevail on personal jurisdiction by first disputing the issue and then losing it, and then claiming that the defendant's successful limited appearance to dispute the issue actually meant that he was subject to personal jurisdiction in a second lawsuit by the same opponent.

without prejudice its claims against him.  Prestige Sports was not a party to the state court suit.  In fact, it did not exist until May 2001, after the alleged breach of contract, and it was dissolved on December 31, 2005, long before this suit was filed.

Under Indiana law, the doctrines of claim preclusion and issue preclusion apply to litigation between the same parties or their privies.  *Glass v. Continental Assurance Co.*, 415 N.E.2d 126, 128 (Ind. App. 1981), citing *Peterson v. Culver Educational Foundation*, 402 N.E.2d 448, 460 (Ind. App. 1980).  The term "privity" describes:

> the relationship between persons who are parties to an action and those who are not parties to an action but whose interests in the action are such that they may nevertheless be bound by the judgment in that action. *Marsh v. Paternity of Rodgers by Rodgers*, 659 N.E.2d 171, 173 (Ind. Ct. App. 1995).  The term includes those who control an action, though not a party to it, and those whose interests are represented by a party to the action. *Id.*

*Small v. Centocor, Inc.*, 731 N.E.2d 22, 27-28 (Ind. App. 2000).  The requirement of privity may be relaxed if the liability of a defendant asserting a defense of claim or issue preclusion is dependent on or derived from the liability of a party exonerated in an earlier suit by the same plaintiff on the same facts.  *Glass*, 415 N.E.2d at 128, quoting *Mayhew v. Deister*, 244 N.E.2d 448, 454 (Ind. App. 1969).

Quest's contract was only with 1st Turf.  The problem for Quest in this case is that its theory for holding McGraw and/or Prestige Sports liable on the merits and for exercising personal jurisdiction over them is that they were both not only in privity with 1st Turf but also are both actually alter egos of 1st Turf.   In paragraph 6 of the complaint, Quest alleges:

> Plaintiff alleges that all times relevant hereto, Defendants, and each of them, were the agents, principals, servants, representatives, assigns, partners, members, officers, directors, employees and alter egos of each other; were directly or indirectly controlled by other Defendants; occupied similar status and performed similar functions; and that at all times mentioned, were acting with the purpose and scope of said agency, service, partnership, joint venture and employment and alter ego with the express and implied authority, consent, approval and ratification of each other, such that all are jointly, severally and individually liable for Plaintiff's damages, as set forth herein.

In footnote 2 of its brief, plaintiff writes:   "Plaintiff also contends that the Defendants are alter egos of one another such that personal jurisdiction over one satisfies jurisdiction over all."  Because Quest's basis for holding McGraw and Prestige Sports liable for the alleged wrongs by 1st Turf is that they were in privity with 1st Turf and were even alter egos of 1st Turf, the state court's determination that it lacked personal jurisdiction over 1st Turf should be equally applicable to McGraw and Prestige Sports.

In theory, of course, there might be different answers for personal jurisdiction for different defendants.  For example, if there were evidence that McGraw or Prestige Sports had established a residence or principal place of

business or some other significant presence in Indiana that would support general jurisdiction over them in Indiana, the answers for them might be different.  There is no such evidence here.  Both are based in Florida, and neither resides, owns property, or regularly does business in Indiana.  Their possible occasional business dealings in Indiana are not related to this lawsuit and could not support the exercise of general jurisdiction over them in Indiana.  See *Purdue Research Foundation*, 338 F.3d at 787 (noting that "the constitutional requirement for general jurisdiction is 'considerably more stringent' than that required for specific jurisdiction" because a finding of general jurisdiction means  that it would be fair to require the defendant to answer in the forum for any claims arising anywhere in the world).[2]  Even if their contacts with Indiana (based on 1st Turf's contacts with Indiana) might arguably support specific jurisdiction in Indiana for Quest's claims, those contacts would present essentially the identical question that the state court already decided against Quest.

Accordingly, the court concludes that Indiana's doctrine of issue preclusion applies here to bar this court from exercising personal jurisdiction over Quest's claims against the three defendants in this case.  The court does not reach the separate issues of venue or service of process on Prestige Sports, or defendants' motion to strike portions of the complaint.

-------------------

[2]For this reason, Quest's suggestion that there is a disputed issue of fact as to whether Prestige Sports or 1st Turf installed synthetic turf fields at two locations in Indiana in recent years does not present a material dispute.

The court has considered plaintiff's motion for leave to conduct discovery on personal jurisdiction or in the alternative for transfer to the Middle District of Florida.  See generally *Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 311 (S.D. Ind. 1997) (denying motion for leave to conduct discovery on personal jurisdiction where plaintiff had not made colorable showing of basis for personal jurisdiction against defendant who had moved to dismiss on that basis).  Facts relevant to specific jurisdiction were fully aired in the state court litigation in 2004.  Plaintiff has not offered any plausible basis for believing that any defendant might be subject to general jurisdiction in Indiana based on more recent events.  The court therefore denies plaintiff's motion for discovery.

That leaves the question of dismissal or transfer.  Transfer under 28 U.S.C. § 1404(a) would not be appropriate here.  That statute applies only if the case was properly in this district in the first place.  Because the defendants are not subject to personal jurisdiction here, section 1404(a) does not apply.  Nevertheless, the court has the power to transfer the case to an appropriate venue pursuant to 28 U.S.C. § 1406(a).[3]

The fact that this dispute arises from events in 2000 weighs in favor of dismissal, and it is hard not to wonder about the delay of more than two years

---

[3]The difference could be important.  If the transfer were under section 1404(a) for the convenience of parties or witnesses or in the interest of justice, the receiving court would be required to apply Indiana choice of law principles.  See *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

between the state court dismissal and the new filing in federal court.  At the same time, the court must assume for these purposes that at least some of plaintiff's claims might have some merit, as alleged in the complaint.  If plaintiff in fact performed under the contract and was entitled to $301,000, and if in fact defendants were paid by the general contractor but simply refused to pay plaintiff and then misled plaintiff about the reasons that 1st Turf had not in turn paid plaintiff,  the interests of justice might point in the direction of deciding the case on the merits.  Plaintiff Quest, by waiting as long as it has at various stages of this story, has allowed some tall and thorny obstacles to grow in its path toward a recovery.  But the evaluation of those issues should occur in a court with proper jurisdiction over the parties.  Accordingly, the court hereby orders the clerk of the court to TRANSFER this action to the Middle District of Florida, Tampa Division.


So ordered.

Date: August 15, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana


Copies to:

B. Joseph Davis
Attorney at Law
bjosephdavis@comcast.net

Robert L. Gauss
ICE MILLER LLP
gauss@icemiller.com

Elizabeth T.L. Raymond

ICE MILLER LLP
elizabeth.raymond@icemiller.com